UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GERARDO VAZQUEZ-MENTADO,

                    Plaintiff,

       -against-                          5:12-CV-0797 (LEK/ATB)

BUITRON, *et al.*,

                    Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

On May 14, 2012,  Plaintiff Gerardo Vazquez-Mentado ("Plaintiff") filed a Complaint

against Defendants Border Patrol Agents Buitron, Lorenzo, John Doe 1, John Doe 2, Chief Border

Patrol Agent Kevin Oaks, and the United States of America (collectively, "Defendants").  Dkt. No.

1 ("Complaint").  In the Complaint, Plaintiff asserts a Bivens[1] claim and claim under the Federal

Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.  Id. ¶¶ 57-60.

On September 28, 2012, Defendants filed a Motion to dismiss Plaintiff's Complaint for

failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and a lack

of subject-matter jurisdiction.  Dkt. No. 19.  In response, Plaintiff filed an Amended Complaint on

November 6, 2012.  Dkt. Nos. 26 ("Amended Complaint").  In his Amended Complaint, Plaintiff

asserts causes of action for false arrest and false imprisonment as the torts underlying the FTCA

claim.  See id.  In response to the Amended Complaint, Defendants filed a renewed Motion to

dismiss for failure to state a claim on December 7, 2012.  Dkt. No. 33 ("Motion").  On January 9,

2013, Plaintiff filed a Response in opposition to Defendants' Motion.  Dkt. No. 36 ("Response").

_____

[1] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

Defendants, in turn, filed a Reply on January 16, 2013. Dkt. No. 37 ("Reply"). Finally, on March 11, 2013, Plaintiff filed a Supplemental Memorandum in opposition to Defendants' Motion. Dkt. No. 40 ("Supplement"). Presently before the Court is Defendants' Motion to dismiss.

## II.    BACKGROUND

Plaintiff is a resident of Oswego, New York, who became a naturalized citizen of the United States on June 10, 1998. Am. Compl.¶ 6. In late September 2009, Plaintiff noticed a Border Patrol vehicle near his residence. Id. ¶ 12. On September 29, 2009, Plaintiff, his wife, Cherrie Vazquez ("Mrs. Vazquez"), and their two children were driving in Plaintiff's 2002 Chevrolet van near his home. Id. ¶¶ 13, 15. Plaintiff, who was driving in conformity with the vehicle and traffic law of the State of New York, parked his van on the street. Id. ¶ 14. The Border Patrol vehicle that he had noticed earlier then parked behind him with its lights flashing. Id. ¶ 17. Defendants Buitron and Lorenzo, both uniformed and armed, exited the vehicle, approached the van, and asked Plaintiff for identification. Id. at ¶ 18. Plaintiff produced his New York State driver's license, stating the name "Gerardo Vazquez."[2] Id. ¶ 19. Defendants Buitron and Lorenzo replied "You are Gerardo Vasquez-Mentado, you are illegal" and ordered Plaintiff out of the van. Id. ¶ 20. In the presence of Plaintiff's wife and children, Defendants Buitron and Lorenzo proceeded to search and then handcuff Plaintiff. Id. ¶ 21.

Throughout the encounter, Plaintiff and his wife repeatedly told Defendants Buitron and Lorenzo that Plaintiff was a U.S. citizen and that his license was valid. Id. ¶¶ 22-23. However, Defendants Buitron and Lorenzo insisted that Plaintiff "was illegal" and did not check his driver's license to see if it was valid. Id. ¶¶ 24-25. When asked by Mrs. Vazquez why Plaintiff had been

_____

[2] Plaintiff's full name is Gerardo Vazquez-Mentado. Am. Compl. ¶ 6.

2

stopped, Defendants refused to answer. <u>Id.</u> ¶ 26. Mrs. Vazquez also informed Defendants that she too was a United States citizen. <u>Id.</u> ¶ 27. At one point during the encounter, Plaintiff informed Defendants that his handcuffs were too tight. <u>Id.</u> ¶ 28. In response, Defendants told Plaintiff not to worry about it and not to move his arms. <u>Id.</u>

Mrs. Vazquez offered to go back to Plaintiff's house and retrieve his naturalization certificate and U.S. passport. <u>Id.</u> ¶ 31. However, Defendants asserted that they could not wait and had to take Plaintiff to their office immediately. <u>Id.</u> ¶ 32. Without further inquiry into Plaintiff's citizenship status, Defendants then placed Plaintiff into the backseat of an Oswego Police car. <u>Id.</u> ¶¶ 33, 36. An Oswego Police Officer proceeded to transport Plaintiff to the Oswego Border Patrol station with Defendants following in the Border Patrol vehicle. <u>Id.</u> ¶ 34. At the Border Patrol station, Plaintiff was released from the handcuffs, but "at all times . . . was under arrest and was not free to leave." <u>Id.</u> ¶ 37. When Plaintiff arrived at the Border Patrol station, Defendants John Doe 1 and John Doe 2, both of whom were uniformed and armed, were already present. <u>Id.</u> ¶ 38. Defendants Doe 1 and 2 fingerprinted and photographed Plaintiff. <u>Id.</u> ¶ 39. Plaintiff was then questioned about his citizenship status by Defendants John Doe 1 and 2. <u>Id.</u> ¶ 40.

During this questioning, Defendants Doe 1 and 2 showed Plaintiff a piece of paper with the name "Gerardo Vasquez-Mentado" written on it, as well as a date of birth, which was the same as Plaintiff's. <u>Id.</u> ¶ 41. Defendants Doe 1 and 2 then told Plaintiff that he was "Gerardo Vasquez-Mentado" and that they had arrested him in Texas in 1993. <u>Id.</u> ¶ 41. Plaintiff responded that in 1993 he was a legal permanent resident living in Oswego, New York. <u>Id.</u> ¶ 42. Further, Plaintiff pointed out that his last name was spelled differently than the name of the alleged target. <u>Id.</u> ¶ 43. Plaintiff also showed Defendants Doe 1 and 2 his New York State pistol permit, which indicated

3

that he was not an alien.  Id. ¶ 44.  Despite Plaintiff's contentions that he was a U.S. citizen and the two valid forms of identification that he presented to the Border Patrol Agents, Plaintiff remained in custody until Mrs. Vazquez brought his Naturalization Certificate and U.S. passport to the Border Patrol station.  Id. ¶ 45.

Plaintiff alleges that Defendants' actions were not in compliance with the "applicable laws, policies and procedures in investigating [his] immigration status . . . prior to detaining and arresting him."  Id. ¶ 29.  Plaintiff further asserts that prior to being transported to the Border Patrol station, Defendants made no effort to validate or invalidate his claims that he was a citizen.  Id. ¶ 35.  Plaintiff also contends that in the Buffalo, New York, sector of the U.S. Border Patrol there is "a pattern and practice of unlawful detentions and/or arrests of U.S. citizens," which is encouraged by Defendant Oaks who trained and supervised the four Defendant Border Patrol agents.  Id. ¶¶ 50, 51.

Based on these facts, Plaintiff sets forth both a Bivens claim and an FTCA claim.  Id. ¶¶ 57-60.  The Bivens claim asserts that Defendants' actions, in their individual capacities, violated Plaintiff's Fourth Amendment right to be free from unlawful search, seizure, and arrest.  Id. ¶ 58.  Plaintiff's FTCA claim asserts that Defendants' actions constituted false arrest and imprisonment and that because these actions were committed within the scope of Defendants' employment, Defendant United States of America should be held liable.  Id. ¶ 60.

## III.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Such a

4

determination "requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted).  A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555).  Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, a pleader has not demonstrated that she is entitled to relief, and the action is subject to dismissal.  See id. at 678-79.

IV.      **DISCUSSION**

    **A. FTCA Claim**

    The FTCA allows a party to file suit against federal government employees normally granted sovereign immunity when there has been a violation of a state or common law tort.  See 28 U.S.C. § 1346(b)(1); FDIC v. Meyer, 510 U.S. 471, 478 (1994).  In this case, Plaintiff puts forth claims of false imprisonment and false arrest as the underlying tort violations that give rise to governmental liability.  Am. Compl. ¶ 60.

In order to make out a claim for false imprisonment, a plaintiff must establish that "(1) the defendant intended to confine, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Benjamin v. United States, 554 F. Supp. 82, 85 (N.D.N.Y. 1982) (internal quotation marks omitted). False arrest requires the same elements; however, the first three elements are assumed under New York law if the confinement resulted from "a law enforcement official's assertion of his power to arrest." See id.; see also Liranzo v. United States, 690 F.3d 78, 91 (2d Cir. 2012) ("Under New York law, the tort of false arrest is synonymous with that of false imprisonment.") (internal citations and quotation marks omitted). Claims of false imprisonment and false arrest turn on whether the arresting officers had the requisite legal justification for making the arrest. Benjamin, 544 F. Supp. at 85. Therefore, the presence of probable cause to arrest serves as "a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

Probable cause requires an arresting officer to possess "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citing Martinez v. Simonett, 202 F.3d 625, 634 (2d Cir. 2000)). In determining whether an officer had probable cause, "courts must consider those facts available to the officer at the time of the arrest and immediately before it." Id. at 395 (citing Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002)). This requires a court to "look to the 'totality of the circumstances' and . . . [realize] that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Id. (citing Caldarola, 298 F.3d at 162). The probable cause standard "is a practical, nontechnical conception that deals

with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." United States v. Steppello, 664 F.3d 359, 364 (2d Cir. 2011). While probable cause "does not require absolute certainty," Panetta, 460 F.3d at 395, officers "may not disregard plainly exculpatory evidence." Id. (citing Kerman v. City of New York, 261 F.3d 229, 241 (2d Cir. 2001)). In a case of mistaken identity, "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." Hill v. California, 401 U.S. 797, 802 (1971) (internal quotation marks omitted).

In the immigration context, in order to arrest a suspect, an officer is required to have "reason to believe" that the suspect is an alien unlawfully in the United States. 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(I). Reason to believe has been defined as requiring probable cause.[3] Avila-Gallegos v. INS, 525 F.2d 666, 667 (2d Cir. 1975); Ojeda-Vinales v. INS, 523 F.2d 286, 288 (2d Cir. 1975).

In this case, Defendants contend that Defendants Buitron and Lorenzo had probable cause to arrest Plaintiff and that Plaintiff's FTCA Claim must therefore be dismissed. Mot. at 8. Defendants argue that there was probable cause to believe that Plaintiff that was an illegal alien who entered the United States in violation of the Immigration and Nationality Act. See 8 U.S.C. §§ 1325-1326. Border Patrol Agents made this determination after Plaintiff voluntarily produced a New York State driver's license stating his date of birth and the name "Gerardo Vazquez." Mot. at 8. The date of birth on Plaintiff's license was the same as the birth date of "Gerardo Vasquez-

---

[3] In the interest of clarity, therefore, the Court refers to "probable cause" in its analysis of Defendants' Motion and of the merits of this case.

Mentado," an alien whom Border Patrol had arrested in 1993 for illegally entering the United States. Id.

While Defendants assert that Plaintiff's name "matched that of their target," the license that Plaintiff provided to the Border Patrol Agents included only the first part of his last name. Id. at 2; Am. Compl. ¶ 41; Dkt. No. 1-1 at 4. Further, the spelling of this part of Plaintiff's name contained a "z" rather than an "s." Because the present Motion was made pursuant to Rule 12(b)(6), the Court must assume that Defendants based their probable cause determination wholly on the facts alleged by Plaintiff.

Based on the facts alleged, the Court is unable to conclude that Defendants possessed probable cause to arrest Plaintiff and therefore denies Defendants' Motion on this ground. First, despite Defendants' insistence that Plaintiff's driver's license showed the name of the target, Gerardo Vasquez-Mentado, the parties agree that it did not. Defendants contend, however, that the one-letter difference between "Vazquez" and "Vasquez"[4]

> is fairly insignificant because the two letters ["s" and "z"] make the same sound in Spanish and thus, did not substantially alter the pronunciation of Plaintiff's name. Moreover, it is not uncommon for the names of aliens who have been removed from the United States to be misspelled, given that the officers or agents who are inputting the aliens' names into databases are often tasked with spelling the names as they sound to them due to language barriers, and the aliens being removed seldom produce any identifying documentation.

Reply at 2 n.1. These arguments are both unavailing and chilling. While the Court is certainly mindful of the dangerous nature of law enforcement and the challenging circumstances faced by

---

[4] The Court notes that Plaintiff further asserts that his drivers license read simply "Gerardo Vazquez," not "Gerardo Vazquez-Mentado."

officers in deciding when it is appropriate to arrest, the rationale advanced by Defendants here would create an almost unbridled power to arrest.

It may be in this case that Defendants possessed additional information at the time of Plaintiff's arrest, that Plaintiff physically resembled the target, or that some other contextual clues led the officers to mistakenly believe that they had located the target. However, Plaintiff correctly observes that such facts are not currently before the Court and would be revealed in discovery, after which point the issue of probable cause could be addressed in the context of a motion for summary judgment.[5] See Posr v. Court Officer Shield # 207, 180 F.3d 409, 416 (2d Cir. 1999) (finding insufficient factual basis to grant motion to dismiss on qualified immunity grounds); Castro v. United States, 34 F.3d 106, 112 (2d Cir. 1994) ("Where the claimant's description of the events suggests that the defendants' conduct was unreasonable, and the facts that the defendants claim are dispositive are solely within the knowledge of the defendants and their collaborators, summary judgment can rarely be granted without allowing the plaintiff an opportunity for discovery as to the questions bearing on the defendants' claims of immunity.").

At this point, however, Defendants' repeated contention is that absent further corroboration—and indeed in the face of what appears to be official documentation to the contrary—an officer may, as a matter of law, arrest an individual because she is the same age as a suspect and her name sounds like the suspect's. It is certainly a coincidence that Plaintiff's name so closely resembles that of a man of exactly the same age, and, in context, such a similarity might weigh in favor of a finding of probable cause. However, Plaintiff produced a driver's license that

---

[5] In so noting, the Court takes no position on the possible success of any properly pleaded motion for summary judgment on this issue or the weight that the Court might accord any such information in assessing the presence or absence of probable cause.

featured a different name.[6]  And the Court finds no precedent that directs that an officer in search of

John Doe, aged forty years and two months, immediately has probable cause to arrest John Dowe,

also aged forty years and two months, after seeing (and without verifying) Dowe's accurate, state-

issued identification.[7]

Moreover, Defendants' argument specific to the immigration context is even more troubling.

It may well be that "it is not uncommon for the names of aliens who have been removed from the

United States to be misspelled, given that the officers or agents who are inputting the aliens' names

into databases are often tasked with spelling the names as they sound to them due to language

barriers."  Reply at 2 n.1; cf. Hill, 401 U.S. at 803 ("aliases and false identifications are not

uncommon").  The Court is well aware of the immense challenges faced by the Border Patrol in

combating human trafficking and of the attendant deference shown to them by courts and

legislators.  See, e.g., 8 U.S.C. § 1357; United States v. Montoya de Hernandez, 473 U.S. 531, 541,

543-44 (1985); Tabbaa v. Chertoff, 509 F.3d 89, 92, 97-101 (2d Cir. 2007); Matthew J. Lindsay,

_____

[6] An individual may not lawfully obtain a New York state driver's license without providing proof of immigration/residency/citizenship status.  See Cubas v. Martinez, 870 N.E.2d 133, 135 (N.Y. 2007).

[7] Further, as discussed _infra_, the Court notes that Defendants' arguments regarding the presence of probable cause based on similar names seems particularly rooted in the context of immigration enforcement and concerns about the interchangeability of foreign names.  While the Court recognizes that names of recent immigrants may be less familiar to some in the United States and that distinctions may therefore be more difficult to spot than variations between certain European or Anglicized names (_e.g._, John/Jon, Smith/Smyth, or Eric/Erik), cf. Radha Natarajan, Note, _Racialized Memory and Reliability: Due Process Applied to Cross-racial Eyewitness Identifications_, 78 N.Y.U. L. REV. 1821 (2003) (examining the frequency of cross-racial misidentification by eye witnesses), a lack of cultural familiarity does not excuse disregarding easily confirmable differences.  To hold otherwise would suggest that a lower standard of proof/lower level of investigation might be necessary in the case of individuals with Latin or otherwise non-Anglo names, raising a host of constitutional concerns.

10

*Immigration as Invasion: Sovereignty, Security, and the Origins of the Federal Immigration Power*,
45 HARV. C.R.-C.L. L. REV. 1, 31-40 (2010). A balance has been set between the vital interests of
civil liberties and border security. Cf. United States v. Arvizu, 534 U.S. 266, 274-75 (2002)
(discussing the factors that must be weighed and considered in determining the lawfulness of a
border patrol agent's stop). However, Defendants here ask the Court to upset this balance and
vitiate the compromises that shape border policy by announcing an almost-limitless right to arrest.
Under the rule apparently sought by Defendants, anyone whose name resembles a Border Patrol
target may be arrested without warrant or proof,[8] based solely on the production of what appears to
be an official driver's license because it is possible that someone made an error in identifying the
name of the target.

The Court has no desire to trot out a parade of horribles or to gesture to some yet-to-be-
descended slippery slope, but holding that probable cause resulted from the sparse facts currently
before the Court would surely cause problems for U.S. citizens with "foreign-sounding" or difficult-
to-pronounce names who find themselves unlucky enough to be stopped near a border. In a nation
of immigrants and a nation where individual liberties are sacrosanct, such a result would be
unacceptable.

Defendants further argue that Plaintiff was held for only a short time and that Plaintiff
mistakenly "focuses on what the Agents did not do, but does not acknowledge what they did
do—they released him as soon as they had concrete proof of his citizenship. The Agents' actions
were therefore reasonable." Reply at 4. Even if the Court were to find (at this stage in the litigation

---

[8] The Court notes that the absence of a warrant in this case is not discussed at greater length
because 8 U.S.C. § 1357(a)(2) authorizes warrantless arrests by Border Patrol agents when they
have reason to believe the individual is an alien illegally present in the United States.

or at a later stage) that Defendants acted reasonably at a later point in time in deciding to cease their confinement of Plaintiff and terminate the arrest, such a finding would not dictate a different outcome here.  One of the purposes of probable cause and warrant requirements and the extensive jurisprudence on the issues is to ensure that *post facto* knowledge or information is not used to justify arrest and detention.  See, e.g., Bennett v. N.Y. Police Dep't, No. 12 Civ. 1345, 2013 WL 840611, at *4 (S.D.N.Y. Mar. 1, 2013) ("An after-the-fact lineup selection cannot provide probable cause for an earlier arrest."); Morgan v. Nassau County, No. 03-CV-5109, 2009 WL 2882823, at *19 (E.D.N.Y. Sept. 2, 2009) ("Plaintiff contends that the putative investigation was initiated after his arrest and cannot be used to create probable cause ex post facto.  This scenario would give rise to a genuine issue for trial because 'court[s] look[ ] only to the information that the arresting officer had at the time of the arrest.'" (quoting Peterson v. Cnty. of Nassau, 995 F. Supp. 305, 313 (E.D.N.Y. 1998)) (footnote omitted); Spruill v. Levy, No. 04 Civ. 7316, 2008 WL 2413899, at *4 (S.D.N.Y. June 12, 2008) ("The police may not rely on information gained after-the-fact to show that probable cause existed at the time of arrest."  (citing Saleh v. City of New York, No. 06 Civ. 1007, 2007 WL 4437167, at *8 (S.D.N.Y. Dec. 17, 2007); Campbell v. City of New York, No. 02 Civ. 5186, 2004 WL 943570, at *4 (S.D.N.Y. April 30, 2004))).  That officers may eventually release a suspect based on a reasonable assessment of the situation does not vindicate an otherwise unreasonable arrest or otherwise unreasonable detention.[9]  See id.

---

[9] The Court also notes that Defendants argue that the short duration of Plaintiff's detention as proof of Defendants' reasonableness, arguing that analogous wrongful detention claims have involved much longer periods of imprisonment than the ninety minutes in this case.  See Reply at 4. While the duration may ultimately become a relevant factor at a later stage in this case, at this point, the Court is not convinced that release after a comparatively short period of imprisonment would vitiate Plaintiff's false imprisonment FTCA claim.

Finally, the Court notes that the individual, Gerardo Vasquez-Mentado, whom Defendants were allegedly seeking, had allegedly been detained at the United States-Mexico border over a decade and a half before the stop in question here at the United States-Canada border. Coupled only with the tenuous evidence provided by a driver's license that did not match the name of the suspect,[10] the Court does not find this geographically and temporally distant incident provided the officers with probable cause.

To the extent Defendants might have had probable cause to arrest Gerardo Vasquez-Mentado,[11] their misidentification of Plaintiff as Vasquez-Mentado based on the facts currently alleged was not reasonable. Therefore, based on a thorough review of the totality of the circumstances, the Court is unable to determine at this time that Defendants possessed probable cause to arrest Plaintiff, and Defendants' Motion to dismiss Plaintiff's FTCA claims is accordingly denied.

### B. Bivens Action

In Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), the Supreme Court recognized an individual's right to file suit for constitutional violations committed by federal agents. See Carlson v. Green, 446 U.S. 14, 18 (1980) ("Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). Defendants argue that

---

[10] As noted *supra* and *infra*, that Defendants *may have* possessed additional information—not yet on the record—that led them to believe that the two Gerardos were one and the same is not relevant to the Court's inquiry on the current 12(b)(6) Motion.

[11] The Court need not address whether Defendants had probable cause to arrest Vasquez-Mentado, given that the Court concludes that the mistaken identity was not reasonable based on the facts as currently alleged.

Plaintiff's <u>Bivens</u> action should be dismissed because the Complaint does not establish that

Defendants violated Plaintiff's Fourth Amendment rights. Mot. at 1. Further, Defendants contend

that even if the Court were to find that Defendants did not have probable cause to make the arrest,

they had "arguable probable cause," entitling them to qualified immunity. <u>Id.</u>

### 1. Merits of the Fourth Amendment Claim

In their Motion, Defendants contend that Plaintiff's <u>Bivens</u> claim is essentially duplicative of

his FTCA claim and suffers a variety of defects.[12] Defendants argue that Plaintiff is impermissibly

attempting to elevate a common law tort to a constitutional one and that his allegations merely give

rise to a claim of negligence and does contain the requisite intent on the part of Defendants. <u>Id.</u> at 9.

As Plaintiff concedes, Defendants are correct in stating that mere negligence on the part of a

defendant does not give rise to a constitutional claim. <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 333-

34 (1986). However, in <u>Daniels</u>, the Supreme Court left open the question of whether some *mens*

*rea* between the low bar of negligence and the high threshold of intent might be sufficient to state a

constitutional claim. <u>Id.</u> at 334 n.3 ("[T]his case affords us no occasion to consider whether

something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to

trigger the protections of the Due Process Clause."). Further, the Second Circuit has explicitly

---

[12] As a preliminary matter, to the extent that Defendants contend that Plaintiff has improperly alleged an official capacity claim under <u>Bivens</u>, the Court concludes that any such argument is belied by language of the Amended Complaint itself. <u>See</u> Am. Compl. ¶ 58. The Court additionally finds Defendants' repeated assertions that Plaintiff's <u>Bivens</u> action is simply the same FTCA claim masquerading as a constitutional violation to be unavailing. The Supreme Court has stated that it is "crystal clear that Congress views FTCA and <u>Bivens</u> as parallel, complementary causes of action." <u>Carlson v. Green</u>, 446 U.S. 14, 20 (1980). While this statement would not protect a deficient <u>Bivens</u> or FTCA claim from dismissal, it leads the Court to conclude that it would be inappropriate at this early stage in the litigation to adopt a narrow reading of each cause of action and shoehorn the alleged facts into a single cause of action when Plaintiff has properly pleaded two.

rejected a reading of Daniels as requiring intent and has allowed constitutional claims to proceed when intent was not specifically alleged. See Castro, 34 F.3d at 113 (holding that a claim should not be dismissed when it arose from "a potential abuse of power that rises above mere negligence"). In this case and at this stage in the litigation, the Court concludes that Plaintiff has alleged facts suggesting "a potential abuse of power that rises above mere negligence" and therefore denies Defendants' Motion to dismiss the Bivens action against Defendants Buitron and Lorenzo on culpability grounds. See id.

   2.  *Qualified Immunity*

   Qualified immunity shields government actors from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has held that this allows "an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Therefore, to the extent possible, questions of immunity should be resolved at an early stage in the litigation and "be decided by the court long before trial." Hunter v. Bryant, 502 U.S. 224, 227-28 (1991).

   a.  Probable Cause

   For the reasons discussed in Part IV.A *supra*, the Court rejects Defendants' arguments that any claims are barred by the presence of probable cause at the time of Plaintiff's arrest.

   b.  Arguable Probable Cause

The Court's determination that Defendants lacked probable cause to arrest Plaintiff does not end the inquiry.[13] In the absence of probable cause, an arresting officer may still be shielded from liability under the doctrine of qualified immunity "if [the arresting officer] can establish that there was 'arguable probable cause' to arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). An officer has "arguable probable cause" if: "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Wachtler v. County of Herkimer, 35 F.3d 77, 80 (2d Cir. 1994) (internal quotation marks omitted). The "objectively reasonable" prong of this analysis requires a court to "look to the information possessed by the officer at the time of the arrest." Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010). In doing so, a court cannot look to "'the subjective intent, motives, or beliefs' of the officer." Id. (quoting Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 106 (2d Cir. 2003).

Here, based on the factual allegations and arguments currently before the Court, Defendants Buitron and Lorenzo had only Plaintiff's New York State license to make their probable cause determination. Further, as noted *supra*, Defendants Buitron and Lorenzo failed to make any efforts to determine the validity of the New York State driver's license provided to them by Plaintiff before handcuffing him and transporting him to the Border Patrol Station. Therefore, the Court is unable to conclude at this time that Defendants Buitron and Lorenzo were shielded by qualified immunity. As a result, Defendants Motion to dismiss the Bivens claims against Defendants Buitron and Lorenzo is denied.

---

[13] As noted repeatedly, this determination is not a final one but is reached only for the purposes of resolving the instant Motion.

*3.  Claim Against Defendant Oaks*

In addition to arguing that Defendants Buitron and Lorenzo had probable cause or arguable probable cause such that there was no underlying constitutional violation, Defendants argue that even if there were a constitutional violation, Plaintiff's <u>Bivens</u> action against Defendant Oaks must fail because Plaintiff has not alleged any direct involvement by Defendant Oaks.  <u>See</u> Mot. at 13-18. Because vicarious liability cannot form the basis of a claim under <u>Bivens</u>, Defendants contend, Plaintiff has not stated a valid constitutional claim against Defendant Oaks.  <u>Id.</u> at 14 (citing <u>Iqbal</u>, 556 U.S. at 676-77).  Further, Defendants argue generally that the Amended Complaint's claim against Defendant Oaks lacks the specificity required by Rule 8 of the Federal Rules of Civil Procedure and that the allegations against Defendant Oaks amount to the sort of threadbare and conclusory allegations proscribed by <u>Iqbal</u> and <u>Twombly</u>.  <u>Id.</u>

Plaintiff argues, however, that he has pleaded a valid claim against Defendant Oaks based on a theory of supervisory liability.  Resp. at 18-20.  In his Amended Complaint, Plaintiff alleges that "[u]pon information and belief, there exists in the Buffalo, New York sector of the U.S. Border Patrol a pattern and practice of unlawful detentions and/or arrests of U.S. citizens by the U.S. Border Patrol."  Am. Compl. ¶ 50.  Plaintiff further alleges that Defendant Oaks "trained and supervised the four defendant Border Patrol agents in a manner which encouraged the violations complained of herein, or, in the alternative, failed to train and supervise said defendants in a manner adequate to prevent the violations complained of herein."  <u>Id.</u> ¶ 51.  Plaintiff embellishes this claim in his Supplement, which contains a report from the Immigrant Rights Clinic at New York University Law School and Families for Freedom entitled "Uncovering USBP: Bonus Programs for United States Patrol Agents and the Arrest of Lawfully Present Individuals" (the "Report") and

further claims about an ongoing pattern and practice by the U.S. Border Patrol of unlawfully arresting individuals lawfully present in upstate New York.  See generally Suppl.

While the Court notes that the Supplement and materials attached to it along with other government guidelines submitted alongside the Response might well bolster the pattern-and-practice and supervisory allegations against Defendant Oaks, these facts are missing from the Amended Complaint itself.[14]  Plaintiff relies on Lyttle v. United States, 867 f. Supp. 2d 1256 (M.D. Ga. 2012), in arguing that he has sufficiently pleaded a supervisory liability claim, but that case involved a complaint that contained the sort of factual allegations present in the Supplement and lacking in the Amended Complaint.  See Complaint ¶¶ 94-101, Lyttle, 867 f. Supp. 2d 1256, No. 11-CV-0152; see also id. at 1291 (discussing the specific allegations of the supervisory defendant's supervisory failures).

The Court notes that Lyttle is no more controlling when applied against Plaintiff than when applied in his favor, and the Court in no way adopts an even-more-exacting version of the Iqbal and Twombly standards that would require a plaintiff to prove her case before discovery.  Nevertheless, in this case, the Court concludes that the Amended Complaint remains too conclusory in its statement of the claim against Defendant Oaks.  Therefore, the Court grants Defendants' Motion to dismiss the Bivens claim against Defendant Oaks.

In the interests of justice and in light of the strong preference for allowing parties to amend their pleadings, see, e.g., FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or

---

[14] The Court is aware that the Report was not prepared until January 2013 and therefore would not have been available to Plaintiff at the time his Complaint and Amended Complaint were filed.  See Suppl. at 1.

18

declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"), however, the Court grants Plaintiff leave to amend his Amended Complaint to incorporate the factual basis for his claim against Defendant Oaks currently provided in the Supplement. Any such amendment may address only the <u>Bivens</u> claim against Defendant Oaks and the allegation of a pattern and practice of unconstitutional arrests.

### C. Declaratory Relief

In their Motion, Defendants object to Plaintiff's request for declaratory relief in the form of a declaration that Defendants violated Plaintiff's constitutional rights. Because the Court grants Plaintiff leave to amend his claim against Defendant Oaks, leaving the question of alleged ongoing unconstitutional conduct by Defendants unresolved, the Court reserves judgment on the availability or propriety of declaratory relief in this case.

### D. Doe Defendants

Because the Court denies Defendants' Motion to dismiss in part, because Plaintiff's Amended Complaint survives in part, and because Plaintiff has not sought to amend his pleadings further to name the Doe Defendants, the Court denies as premature Defendants' Motion to dismiss the Doe Defendants.[15]

## V.      CONCLUSION

---

[15] Defendants concede that "the Court need not decide the issue at this stage of the litigation. If the Court dismisses Plaintiff's lawsuit, the issue will be moot. If the Court denies [Defendants'] motion to dismiss, the arguments about relation back are premature because Plaintiff has not yet identified the 'John Doe' defendants." Reply at 9-10 n.3.

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 33) to dismiss Plaintiff's Amended Complaint (Dkt. No. 26) is **GRANTED in part** and **DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Defendants' Motion to dismiss the Amended Complaint (Dkt. No. 26) as against Defendant Oaks is **GRANTED** and Plaintiff's <u>Bivens</u> action against Defendant Oaks is **DISMISSED without prejudice**; and it is further

**ORDERED**, that if Plaintiff wishes to amend his Amended Complaint (Dkt. No. 26) to replead his claim against Defendant Oaks, he must do so within **thirty (30) days** of the filing date of this Memorandum-Decision and Order. Any such amendment may address **only** the <u>Bivens</u> claim against Defendant Oaks and the allegation of a pattern and practice of unconstitutional arrests. If Plaintiff does not amend his Amended Complaint (Dkt. No. 26) consistent with the terms of this Memorandum-Decision and Order within **thirty (30) days** of the filing date of this Memorandum-Decision and Order, this case will proceed with the Amended Complaint (Dkt. No. 26) as the operative pleading and Defendant Oaks and the claim against him will be dismissed from this case without further order of the Court; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 33) to dismiss Plaintiff's FTCA claims is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 33) to dismiss Plaintiff's <u>Bivens</u> action against Defendants other than Defendant Oaks is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 33) to dismiss the John Doe Defendants is **DENIED as premature**; and it is further

**ORDERED**, that the Court **RESERVES JUDGMENT** on the issue of the availability and propriety of declaratory relief in this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED:        May 28, 2013
              Albany, New York

Lawrence E. Kahn
U.S. District Judge