UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GERARDO VAZQUEZ-MENTADO,

                    Plaintiff,

      -against-                                5:12-CV-0797 (LEK/ATB)

MORGAN BUITRON, *et al.*,

                    Defendants.

## MEMORANDUM-DECISION and ORDER

### I.  INTRODUCTION

In this civil rights action, Plaintiff Gerardo Vazquez-Mentado ("Plaintiff") asserts claims against various members of the U.S. Customs and Border Protection's ("CBP") Office of Border Patrol ("USBP") arising out of his arrest and detention on suspicion of being an alien illegally present in the United States.  See generally Dkt. No. 89  ("Third Amended Complaint").  Presently before the Court is Plaintiff's Appeal of U.S. Magistrate Judge Andrew T. Baxter's Order denying in part Plaintiff's Motion to compel discovery.  Dkt. Nos. 83 ("Motion"); 104 ("Order"); 109 ("Transcript");[1] 110 ("Appeal").  For the following reasons, the Order is affirmed in part, reversed in part, and the Court reserves decision in part pending *in camera* review.

### II.  BACKGROUND

The Court presumes the parties' familiarity with the facts and history of this case, and discusses only those facts relevant to Plaintiff's Appeal.

The two USBP agents who arrested Plaintiff, Defendants Morgan Buitron ("Buitron") and

---

[1] Judge Baxter issued a short written Order following an oral hearing on the Motion.  See Order.  The reasoning underlying the Order is contained in the Transcript of the hearing.  See Tr. at 34.

Javier Lorenzo ("Lorenzo"), moved for summary judgment on January 17, 2014. Dkt. No. 75. Plaintiff subsequently filed his Third Amended Complaint, which names several newly identified Defendants, including Steven Glenn ("Glenn") and Jeffrey Moch ("Moch"), the agents who fingerprinted, photographed, and questioned Plaintiff at the Border Patrol Station to which he was taken after his arrest. Third Am. Compl. ¶¶ 46-54; Dkt. No. 82. A summary judgment motion on behalf of these new Defendants has not yet been filed, but is anticipated. Tr. at 5; see also Dkt. Nos. 103, 117.

On February 6, 2014, Plaintiff filed his Motion to compel production of documents deleted from Defendants' mandatory disclosures, as well as responses to Plaintiff's interrogatories and requests for production of documents. Mot. at 1-2. The discovery sought by Plaintiff included, *inter alia*: (1) information and documents regarding various trainings attended by Buitron and Lorenzo prior to September 29, 2009; (2) information and documents regarding Buitron and Lorenzo's receipt of bonuses pursuant to the incentive system allegedly organized by Defendant Kevin Oaks; (3) records of prior apprehensions or seizures by Buitron and Lorenzo of U.S. citizens, permanent residents, or other lawful aliens; (4) information about which databases Buitron and Lorenzo had access to prior to, during, and after Plaintiff's arrest, along with a screenshot of the entry for Plaintiff in each database; and (5) an unredacted copy of page 2 of the records check relied on by Buitron and Lorenzo, which is a screenshot from the Automated Targeting System-Land ("ATS-L") database. Dkt. No. 83-2. Judge Baxter denied the Motion as to requests two through five, and granted the first request only as to certain trainings received between 2007 and September

2009.² Order. Plaintiff filed his Appeal and supporting Memorandum on April 3, 2014. Appeal; Dkt. No. 110-2 ("Memorandum"). Defendants filed a Response and Plaintiff filed a Reply. Dkt. Nos. 113 ("Response"); 118 ("Reply").

### III.  LEGAL STANDARD

A district court may designate a magistrate judge to hear and decide any non-dispositive pre-trial matter. 28 U.S.C. 636(b)(1)(A); FED. R. CIV. P. 72(a); see also L.R. 7.1(b)(2). When objection is made to a non-dispositive matter decided by a magistrate judge, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A); L.R. 72.1(b). Reversal of a magistrate judge's decision on a non-dispositive matter is appropriate where a reviewing court is left "with the definite and firm conviction that a mistake has been committed." Diesel Props S.R.L. v. Greystone Bus. Credit, LLC, No. 07 Civ. 9580, 2008 WL 5099957, at *1 (S.D.N.Y. Dec. 3, 2008) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). An order will be deemed contrary to law "'if it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" State of New York v. Oneida Indian Nation of N.Y., No. 95-CV-554, 2007 WL 2287878, at *11 (N.D.N.Y. Aug. 7, 2007) (Kahn, J.) (quoting Mitchell v. Goord, No. 03-CV-19 2005 WL 701096, at *2 (N.D.N.Y. Mar. 21, 2005)).

### IV.  DISCUSSION

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense" and "[f]or good cause, the

---

² Judge Baxter's Order disposed of several other requests, which are not part of the Appeal and therefore not directly relevant here. See generally Tr.; Order.

3

court may order discovery of any matter relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery rules "are to be accorded a broad and liberal treatment . . . to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." Schlagenhauf v. Holder, 379 U.S. 104, 115 (1964) (internal quotations and citation omitted); see also United States v. Nixon, 418 U.S. 683, 710 (1974) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."). With this standard in mind, the Court considers each component of Plaintiff's Appeal.

**A. Trainings**

*1. Temporal Limitation*

Judge Baxter granted Plaintiff's request to compel disclosure of trainings received by Buitron and Lorenzo dealing with: (1) procedures for investigating an alleged unlawful alien; (2) performing and relying upon a records check; and (3) detention and arrest procedures, but limited the compelled disclosure to trainings received between 2007 and September 2009. Tr. at 30. Although Judge Baxter gave no explicit explanation for this temporal limitation, the parties agree that the 2007 part of the limitation is presumably based on the date that Buitron and Lorenzo were transferred to the Buffalo sector of USBP. Mem. at 3; Resp. at 2.

Plaintiff objects to this limitation, arguing that any trainings received by Buitron and Lorenzo at other USBP stations are relevant to whether Buitron and Lorenzo are protected by qualified immunity because they had arguable probable cause to arrest Plaintiff. See Mem. at 3; see also Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (stating that officer is entitled to

4

qualified immunity where "it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. . . . that is, if officers of reasonable competence could disagree on whether the probable cause test was met." (citations and quotation marks omitted)). Defendants respond that "Plaintiff has offered no explanation why training that each officer received in Texas and Arizona, respectively, has any bearing on the events in Oswego . . . ." Resp. at 3. However, as Judge Baxter noted, "evidence of training of law enforcement officials may be relevant to what a reasonable officer would understand as to whether he was violating a clearly established constitutional right." Tr. at 30 (citing Groh v. Ramirez, 540 U.S. 551, 564 (2004)). "In deciding whether a particular right was clearly established as of a particular time, [a court] must determine (i) whether the right at issue was defined with reasonable clarity; (ii) whether the Supreme Court or the Second Circuit had affirmed the existence of the right; and (iii) whether reasonable police officers in the defendants' position would have understood from the existing law that their conduct was unlawful." Townes v. City of New York, 176 F.3d 138, 144 (2d Cir. 1999). Additionally, the Second Circuit has found that "where the law was established in three other circuits and the decisions of [the Second Circuit] foreshadowed the right, the law was sufficiently 'well established' that its violation stripped the defendant of his immunity." Bailey v. Pataki, 708 F.3d 391, 405 (2d Cir. 2013).

Plaintiff's false arrest claim implicates his rights under the U.S. Constitution, which applies in all fifty states. See U.S. CONST. art. VI, cl. 2. Accordingly, a training received in Arizona may be relevant to a reasonable officer's understanding of whether he committed a violation of a clearly established constitutional right while in New York. Although, in some cases, whether a right is clearly established may vary with geography due to differences in the precedents of the Circuit

5

Courts of Appeal, see Townes, 176 F.3d at 144, the possibility of such differences is not enough, on its own, to render an out-of-Circuit training of such little relevance that it is undiscoverable, see Bailey, 708 F.3d at 405; Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010) ("[T]he unconstitutionality of [a] law or course of conduct will nonetheless be treated as clearly established if decisions by this or other courts clearly foreshadow a particular ruling on the issue, even if those decisions come from courts in other circuits." (internal citation and quotation marks omitted)). Accordingly, information regarding pre-2007 trainings is relevant to whether Buitron and Lorenzo had arguable probable cause to arrest Plaintiff.

Because the Order provides no other justification for the 2007 limitation, this portion of the Order is reversed.

### 2. *Post-Arrest Detention*

Judge Baxter denied Plaintiff's Motion as to trainings received by Buitron and Lorenzo on post-arrest detention procedures. Order; Tr. at 30. In support of his Appeal, Plaintiff argues that "[s]ince the defendant agents arrested the plaintiff, and remained with him until he was released, whether their actions were in accord with their training is certainly relevant to the issue of whether they continued to possess probable cause to detain." Mem. at 3. Defendants respond that what Buitron and Lorenzo knew after Plaintiff's arrest is irrelevant to whether they had probable cause to effect the initial arrest. Resp. at 3-4. Defendants are correct. However, Plaintiff—in addition to alleging that Defendants violated his rights by arresting him at his home and transporting him to the Oswego station—also alleges that Defendants falsely imprisoned him at the Oswego station by detaining him even after they received evidence establishing his citizenship. Third Am. Compl. ¶¶ 53-54. Where a law enforcement official lawfully arrests an individual based on probable cause

that he has committed a crime, but subsequently is confronted with evidence demonstrating that the individual has not committed a crime, the official cannot detain the individual indefinitely simply because the initial arrest was lawful. See, e.g., Russo v. City of Bridgeport, 479 F.3d 196, 209 (2d Cir. 2007) (recognizing that officers have a duty "to investigate specific, readily-verifiable claims of innocence in a reasonable time period"); Cannon v. Macon Cnty., 1 F.3d 1558, 1563 (11th Cir. 1993). Nevertheless, although Plaintiff alleges on appeal that Buitron and Lorenzo "remained with him until he was released," Mem. at 3, their role in the allegedly prolonged detention appears secondary at best in the Third Amended Complaint, see Third Am. Compl. ¶¶ 49-54. Therefore, Judge Baxter's finding that trainings on post-arrest procedures received by Buitron and Lorenzo were irrelevant to Plaintiff's claims against them is not clearly erroneous. Accordingly, this portion of the Order is affirmed.[3]

### B. Bonuses

In his Reply, Plaintiff withdraws his objection to the Order's denial of his request for information on bonuses. Reply at 1. Accordingly, the Order is affirmed on this issue.

### C. Prior Encounters with Persons in Lawful Status

In his Motion, Plaintiff also sought records of prior apprehensions or seizures of U.S.

---

[3] Although Buitron and Lorenzo's role in this allegedly prolonged detention is unclear, Plaintiff has also sued Glenn and Moch, the agents primarily responsible for Plaintiff's post-arrest processing and interrogation at the Border Patrol Station. Third Am. Compl. ¶¶ 46-54. In ruling on Plaintiff's Motion to compel, Judge Baxter stated that his task was to "determine whether some or all of the additional discovery is necessary for the resolution of the summary judgment motion based on qualified immunity, both the existing one and the anticipated motion with respect to the new defendants." Tr. at 12-13. Trainings on post-arrest detention received by Glenn and Moch would likely be relevant to their anticipated motion for summary judgment. However, Plaintiff's Motion to compel—the subject of this Appeal—concerned discovery of trainings received by Buitron and Lorenzo, not Glenn and Moch. See Mot.

citizens, permanent residents, and other lawful aliens by Buitron and Lorenzo. Dkt. No. 83-2 at 5-6. Judge Baxter rejected this request, stating that while "such information may be relevant generally to defendants' state of mind," it is irrelevant to the objective arguable probable cause analysis. Tr. at 32.

Although the arguable probable cause standard is an objective one, the circumstances of the arrest must nevertheless be considered "in light of [the officer's] training and experience." United States v. Delossantos, 536 F.3d 155, 159 (2d Cir. 2008); see also Ornelas v. United States, 517 U.S. 690, 700 (1996) ("[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists."); Cerrone v. Brown, 246 F.3d 194, 203 (2d Cir. 2001) ("[F]or the purpose of qualified immunity and arguable probable cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences."); 2 WAYNE R. LAFAVE ET AL., CRIM. PROC. § 3.3(b) (3d ed.) ("[T]he experience-expertise rule cuts both ways; an experienced officer will be held not to have had probable cause if a man with his special skills, though perhaps not a layman, should have recognized that no criminal conduct was involved."). Accordingly, Buitron and Lorenzo's past encounters with persons lawfully in the United States may be relevant to what inferences a reasonable officer would have—or should have—drawn based on past experience in determining whether there was probable cause. This portion of the Order is therefore reversed.

**D. Databases**

In his Motion, Plaintiff also sought information about which databases Buitron and Lorenzo had access to prior to Plaintiff's arrest, at the scene of the arrest, and at the border patrol station, as well as a screenshot of the entry for Plaintiff in each database. Mem. at 7. Judge Baxter denied this

request for several reasons.

First, Judge Baxter found that this information is irrelevant to the arguable probable cause analysis because "Plaintiff's argument that the defendant[s] should have done more to double check [the information in the records check] would not . . . be sufficient to negate the initial probable cause that was later proven to be based upon mistaken information." Tr. at 23. In arguing for affirmance, Defendants cite the principle that probable cause is determined based on facts available to the officer "at the time of the arrest." Resp. at 13-14; see also Kent v. Thomas, 464 F. App'x 23, 25 (2d Cir. 2012) ("For false arrest claims, the probable cause inquiry focuses on the facts reasonably believed by the officers at the time of the arrest; even if it later turns out that the officers were mistaken, a mistake of fact would not undermine probable cause so long as their belief was objectively reasonable." (citing Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008)). Defendants also cite various authorities for the related proposition that arresting officers need not perform an exhaustive search to ensure that post-arrest prosecution of a lawfully arrested person will be successful. See Mem. at 13-14.

However, Plaintiff is not arguing that his arrest was unlawful because Defendants failed to double check an initial records check that was otherwise supportive of probable cause; he is arguing that the initial records check did not establish probable cause in the first place.[4] Mem. at 9. In other words, whether probable cause existed based on the initial records check is precisely the issue in dispute in this case. Mem. at 9 & n.1. "The existence of probable cause must be determined by reference to the totality of the circumstances," Illinois v. Gates, 462 U.S. 213, 238 (1983), and

---

[4] As noted *supra*, Plaintiff also alleges that Defendants falsely imprisoned him during his post-arrest detention. See Mem at 3-4.

actual access to sophisticated electronic databases constitutes part of the relevant totality in this case. Whether the arresting officers had access to a wealth of additional information on Plaintiff's immigration status at their fingertips must be considered in assessing whether they acted reasonably in arresting Plaintiff on suspicion of being an illegal alien based on the initial records check. Therefore, whether Defendants could have performed an additional records check (1) after reviewing those initial results, and (2) after Plaintiff told them he was a U.S. citizen and produced a valid driver's license, is relevant and discoverable information in this case.

Judge Baxter also found that Plaintiff already has sufficient evidence to argue that Defendants lacked probable cause, noting that Defendants have acknowledged that their initial records check failed to discover Plaintiff's third A-number.[5] Tr. at 23. Plaintiff argues that this holding runs contrary to the liberal spirit of Rule 26(b)(1), Mem. at 11-12, which allows court-ordered discovery of "any matter relevant to the subject matter involved in the action," upon a showing of "good cause," FED. R. CIV. P. 26(b)(1). Plaintiff has shown good cause for this information. See Mem. at 7-11. Access to databases is not a tangential or speculative issue in this case; it forms the core of the probable cause analysis. Indeed, Defendants' theory of the case is that the arresting agents had probable cause to arrest Plaintiff as an illegal alien based on the results of a records check. See Dkt. No. 75-2 at 20-21. Whether additional evidence of Plaintiff's citizenship was readily available to the arresting agents may undermine Defendants' theory. Furthermore, this

---

[5] An Alien Number ("A-Number") is a unique identifier associated with an Alien-File ("A-File"). See U.S. DEP'T OF HOMELAND SECURITY, PRIVACY IMPACT ASSESSMENT FOR THE INTEGRATED DIGITIZATION DOCUMENT MANAGEMENT PROGRAM (IDDMP) 2 (2013), available at http://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-iddmp-09242013.pdf. An A-File contains official immigration records of an alien not yet naturalized, including records created as the individual passes through the immigration and inspection process. Id.

information is not "unreasonably cumulative or duplicative," FED. R. CIV. P. 26(b)(2)(c)(i), as it may show not only that the initial records check was inherently deficient, but that reliance on this deficient records check was unreasonable given the ease with which the deficiencies might have been cured, see Mem. at 9-10.

Finally, Judge Baxter also found that denial of the database request was appropriate based on Defendants' assertion of the law enforcement privilege. Tr. at 24-25. "When assessing a claim of law enforcement privilege, a district court must first determine if the law enforcement privilege applies to the documents at issue." In re The City of New York, 607 F.3d 923, 944 (2d Cir. 2010). The party asserting the privilege bears the burden of showing "that the documents contain information that the law enforcement privilege is intended to protect," such as law enforcement techniques and procedures. Id.

Judge Baxter found that the privilege applied, citing the Declaration of Patrick Ott, Acting Executive Director for Targeting in the Office of Intelligence and Investigative Liaison, CBP. Tr. at 24; Dkt. No. 93-4 ("Ott Declaration"). Ott states that, among other things, release of the list of databases to which the arresting agents had access, and the times at which they had access, "would impede CBP's law enforcement mission by alerting individuals to CBP officer and agent capabilities and limitations." Ott Dec. ¶ 10. He raises similar concerns regarding the release of screenshots from each database. Id. Judge Baxter determined that the law enforcement privilege applied based on these assertions, and the Court finds no clear error in this determination. See El Badrawi v. Dep't of Homeland Sec., 258 F.R.D. 198, 203 (D. Conn. 2009) (discussing threshold requirements for establishing law enforcement privilege).

"But the law enforcement privilege is qualified, not absolute." City of New York, 607 F.3d

at 945.  The privilege gives rise to a strong presumption against disclosure, but a party may overcome this presumption by showing: "(1) that its suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) that the information sought is important to the party's case." Id. (internal quotation marks and alterations omitted).  "With respect to the importance of the information sought," the party seeking to overcome the privilege must show a "compelling need" for the information. Id.  Overcoming the presumption does not end the inquiry. Id.  "Rather, once the presumption has been overcome, a court must still balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information." Id. (quotation marks and alterations omitted).  In other words, disclosure is required only if the compelling need for the information outweighs the public interest in nondisclosure. Id.

Plaintiff has satisfied the first and second elements for overcoming the privilege. See Tr. at 17-18.  The issue is therefore whether Plaintiff has shown a compelling need for the database information.  As stated *supra*, Defendants' access and use of databases forms the core of the probable cause analysis in this case.  Accordingly, Plaintiff has shown a compelling need for disclosure of the names and screenshots of databases the arresting agents had access to immediately preceding and during the arrest.  However, the Court cannot balance this compelling need with the government's interest in nondisclosure without reviewing the information.  Accordingly, the Court will order the submission of the information for *in camera* review. See City of New York, 607 F.3d at 948-49 (describing propriety of *in camera* review in context of law enforcement privilege).  Upon review of the requested disclosures, the Court will make a determination as to whether the Order should be affirmed or reversed on this issue.

Plaintiff also seeks the names and screenshots for databases that the arresting agents had access to *after* arresting Plaintiff, i.e., the databases they had access to while Plaintiff was questioned at the Border Patrol Station. Mem. at 12. For the reasons discussed *supra* regarding trainings on post-detention procedures, Plaintiff has not shown a compelling need for information regarding Buitron and Lorenzo's post-arrest access to databases at the Border Patrol Station. Judge Baxter's decision on this issue is therefore affirmed.

**E. ATS-L Screenshot**

Page 2 of the records check relied on by Buitron and Lorenzo is a screenshot from the ATS-L database. Mem. at 13. The ATS-L database contains information from USBP and other sources, including vehicle registration information and biographical data obtained at border inspections. Ott Dec. ¶ 9(a). It is designed to help identify individuals who require additional scrutiny while at border crossings and while traveling through the United States. Id.; Resp. at 20.

Judge Baxter denied Plaintiff's Motion to compel disclosure of the unredacted page based on Defendants' invocation of the law enforcement privilege. Tr. at 14-21. According to Defendants, release of a screenshot from the ATS-L "will have the unintended and undesirable effect of educating individuals as to investigation techniques employed by CBP as facilitated by this database, and will thereby help individuals devise methods to evade detection and apprehension . . . ." Ott Dec. ¶ 9(b); Resp. at 20. Defendants also assert that disclosure of the identities of third-party sources supplying information to the ATS-L could jeopardize USBP's cooperative relationship with third-party law enforcement agencies. Ott Dec. ¶ 9(c); Resp. at 20-21. Plaintiff argues that he has a compelling need for this information given that Buitron and Lorenzo relied on the records check in arresting Plaintiff. Mem. at 15; Reply at 10. Plaintiff also challenges

13

the government's interest in nondisclosure by noting that the existence and operation of the database is public knowledge. Mem. at 15; Reply at 10.

Plaintiff may very well have a compelling need for this information. Given that the ATS-L screenshot forms a part of the records check on which Buitron and Lorenzo actually relied in arresting Plaintiff, it may constitute a critical element of the totality of the circumstances that the Court must look to in evaluating whether they had probable cause. However, as with the other electronic databases described above, the Court cannot make a final determination regarding the law enforcement privilege without examining the document to be disclosed. Accordingly, the Court reserves decision on this part of Plaintiff's Appeal pending *in camera* review of the unredacted version of page 2 of the records check.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Decision and Order (Dkt. No. 104) of March 21, 2014, is **AFFIRMED** to the extent it denied Plaintiff's Motion (Dkt. No. 83) to compel responses to discovery requests regarding: (1) trainings received by Defendants Buitron and Lorenzo relating to post-arrest/detention procedures; (2) Defendants Buitron and Lorenzo's receipt of bonuses; and (3) databases Defendants Buitron and Lorenzo had access to at the Border Patrol Station following Plaintiff's arrest, including relevant screenshots; and it is further

**ORDERED**, that the Decision and Order (Dkt. No. 104) of March 21, 2014, is **REVERSED** to the extent it denied Plaintiff's Motion (Dkt. No. 83) to compel responses to discovery requests regarding: (1) trainings received by Defendants Buitron and Lorenzo prior to 2007 relating to procedures for investigating an alleged unlawful alien (including, but not limited to,

investigating claims of U.S. citizenship); performing and relying upon records checks, detention and arrest procedures and applicable law, regulation, and policy (including, but not limited to, when arrest without a warrant may be made); and (2) records of Defendants Buitron and Lorenzo's prior encounters with U.S. citizens, permanent residents, and other lawful aliens.  Defendants shall produce responses to these discovery requests **within thirty (30) days** of the filing date of this Memorandum-Decision and Order, unless the assigned magistrate judge modifies this deadline; and it is further

   **ORDERED**, that the Court **RESERVES DECISION** on Plaintiff's appeal of the Decision and Order (Dkt. No. 104) of March 21, 2014, to the extent it denied Plaintiff's Motion (Dkt. No. 83) to compel responses to discovery requests regarding: (1) databases Defendants Buitron and Lorenzo had access to prior to encountering Plaintiff on the day of his arrest, and at the point where Defendants Buitron and Lorenzo encountered Plaintiff, including a screenshot of what each database showed for Plaintiff; and (2) an unredacted version of Page 2 of the records check relied on by Defendants Buitron and Lorenzo.  Defendants shall provide these materials to the Court for *in camera* review **within ten (10) days** of the filing date of this Memorandum-Decision and Order; and it is further

   **ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

   **IT IS SO ORDERED.**

DATED:    July 09, 2014
          Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge

15